Jones, J.
(dissenting). We are of the opinion that to grant the relief plaintiff seeks in this action, even to the limited extent contemplated by the majority, would necessarily violate the constitutional prohibition against entanglement of our secular courts in matters of religious and ecclesiastical content. Accordingly, we would affirm the order of the Appellate Division.
We start on common ground. Judicial intervention in disputes with respect to religious and ecclesiastical obligation is constitutionally proscribed, save with respect to a narrow class of issues, as to which, under “neutral principles of law”, the secular component of the religious and ecclesiastical rights and obligations may be resolved without impermissible trespass on or even reference to religious dogma and doctrine (pp 114-115). We depart from the conclusion of the majority that in this case the courts may discern one or more discretely secular obligations which may be fractured out of the “Ketubah”, indisputably in its essence a document prepared and executed under Jewish law and tradition.
We are constrained, as is the majority, by the allegations of the complaint. Plaintiff therein alleges: that the parties were married on May 22, 1966 in a religious ceremony in accordance with Jewish law and tradition; that pursuant to the terms and conditions of the religious ceremony they entered into a contract known as a “Ketubah”; that under the Ketubah the husband declared and contracted with the wife to be her husband according to the law of Moses and Israel and to honor and support her, faithfully cherishing her and providing for her needs as Jewish husbands are required to do pursuant to Jewish religious law and tradition; that pursuant to the Ketubah the parties agreed to recognize the Beth Din of the Rabbinical Assembly and the Jewish Theological Seminary of America as having authority to summon either party at the request of the other *117 and further agreed that in the event of any civil divorce decree the husband would grant and the wife accept a Jewish divorce (“get”) in accordance with the authority vested in the Beth Din; that under the law of Moses should the husband arbitrarily refuse to give a “get” the wife, such as plaintiff in this case, is known and referred to as an “Aguna” which is a state of limbo wherein the wife is considered neither married nor divorced; that a judgment of civil divorce of the parties was entered on May 16, 1978 in the Albany county clerk’s office; that the wife has requested and summoned the husband to appear before the Beth Din of the Rabbinical Assembly pursuant to the terms of the Ketubah but that he has willfully and intentionally refused to appear before the assembly in violation of his contractual obligations; that in consequence the wife is consigned to the status of “Aguna” and is barred from remarrying within the context of a Jewish religious ceremony. The wife demands judgment against the husband: declaring “the rights and other legal relation of the plaintiff and defendant in the marriage contract (Ketubah), created by reason of the written instrument”; declaring that the husband specifically perform pursuant to the terms and conditions of the Ketubah in that he appear before the Beth Din of the Rabbinical Assembly and the Jewish Theological Seminary of America or its duly appointed representatives pursuant to the wife’s request; declaring that failure of the husband so to appear constitutes a breach of contract; and for other incidental relief.
Determination whether judicial relief may be granted the wife without constitutionally impermissible interjection of the court into matters of religious and ecclesiastical content requires examination of the English translation of the Ketubah in the context of the wife’s allegation that this document was made and entered into as part of the religious ceremony in accordance with Jewish law and tradition:
“On the First Day of the Week, the 3rd Day of the Month Sivan, 5726, corresponding to the 22nd Day of May, 1966, Boaz Avitzur, the bridegroom, and Susan Rose Wieder, the bride, were united in marriage in Old Westbury, N.Y. The bridegroom made the following declaration to his bride: ‘Be *118 thou my wife according to the law of Moses and Israel. I shall honor and support thee, faithfully I shall cherish thee and provide for thy needs, even as Jewish husbands are required to do by our religious law and tradition.’
“In turn, the bride took upon herself the duties of a Jewish wife, to honor and cherish her husband, and to carry out all her obligations to him in faithfulness and affection as Jewish law and tradition prescribe.
“And in solemn assent to their mutual responsibilities and love, the bridegroom and bride have declared: As evidence of our desire to enable each other to live in accordance with the Jewish law of marriage throughout our lifetime, we, the bride and bridegroom, attach our signatures to this Ketubah, and hereby agree to recognize the Beth Din of the Rabbinical Assembly and the Jewish Theological Seminary of America, or its duly appointed representatives, as having authority to counsel us in the light of Jewish tradition which requires husband and wife to give each other complete love and devotion, and to summon either party at the request of the other, in order to enable the party so requesting to live in accordance with the standards of the Jewish law of marriage throughout his or her lifetime. We authorize the Beth Din to impose such terms of compensation as it may see fit for failure to respond to its summons or to carry out its decision.
“This Ketubah was executed and witnessed this day in accordance with Jewish law and tradition.
“Boaz Avitzur bridegroom Susan Wieder bride Melvin Kieffer rabbi Abraham Weisman witness Melvin Kieffer witness.”
At the outset we observe that the complaint contains no allegation that the parties intended that the Ketubah should manifest secular promises or have any civil or secular status or any legal significance independent of the religious ceremony between them of which it was an integral part. Nor is any such assertion advanced in the papers submitted by the wife in support of her cross motion for summary judgment.
Moreover, it appears evident to us that any determination of the content and particulars of the rights of the wife *119 or the obligations of the husband under this document cannot be made without inquiry into and resolution of questions of Jewish religious law and tradition. We think it inaccurate to identify the relief sought by plaintiff, as does the majority, as “simply to compel defendant to perform a secular obligation to which he contractually bound himself.” (At p 115.)
The complaint’s first request for relief paints with a broad brush, asking that the court “declare the rights and other legal relation of the plaintiff and defendant in the marriage contract” created by reason of the Ketubah. That such an all-encompassing declaration of rights exceeds the authority of the civil court seems to be implicitly conceded by the majority’s attempt to limit its consideration to enforcement of an obligation characterized as “secular” — the alleged obligation of the husband to appear before the Beth Din.
The wife’s pleading itself, however, not to mention the affidavits submitted by her, makes it clear that even a definition of the purported “secular obligation” requires an examination into the principles and practice of the Jewish religion. Although the English translation of the Ketubah attached to the complaint recites that the parties “recognize the Beth Din * * * as having authority * * * to summon either party at the request of the other”, the complaint seeks a declaration that the husband specifically perform “in that he appear before the Beth Din * * * pursuant to the request of the plaintiff”. Thus, the wife tenders her construction of the document, which in turn presumably is predicated on what she contends is tradition in the faith, i.e., that there is an obligation imposed by the agreement to appear before the Beth Din at the summons alone of the other party to the marriage despite the facial reference to a summons by the Beth Din. The husband, tendering his own construction of the document, denies that he is under any obligation to appear before the Beth Din because an earlier request by him for convocation of such a body was refused. Thus, it appears evident that any judicial determination whether the husband is obligated to appear before the Beth Din, or what nature of summons is required to call such *120 obligation into play, necessarily involves reference to substantive religious and ecclesiastical law.*
The unsoundness of the position espoused by the majority to justify judicial action to compel the husband to appear before the Beth Din, is revealed by projection of the course the continuing litigation will take in this case. The motion to dismiss and the cross motion for summary judgment having both been denied, the case will be set down for trial. The evidence which the wife may be expected to introduce is revealed by examination of the affidavits she submitted in opposition to the motion to dismiss and in support of her cross motion for summary judgment. Her affidavit conveys information furnished her by Rabbi Mordecai Kieffer who in his accompanying affidavit describes himself as “qualified to render an expert opinion concerning matters of Jewish laws and custom”. She relies on his affidavit to support her claim that there was “good and legal consideration” for the Ketubah and that the Beth Din presently has no authority to compel the husband to submit to its jurisdiction. The rabbi, predicated on what he offers as a more accurate translation of the Ketubah into English, expresses the opinion that “good and legal consideration” is to be found in the document itself. Then, describing in detail the procedures incident to the issuance of a “get”, the rabbi concludes that the husband was obligated to submit to the jurisdiction of the Beth Din without the issuance of any summons by it. Accordingly, it is evident that the wife and her counsel are themselves of the view that substantiation of her position will depend on expert opinion with respect to Jewish law and tradition.
The majority’s reference to the fact that marriage relationships solemnized within a religious context are recognized by the civil law is not determinative of the question here presented where what is sought to be enforced is an aspect of the relationship peculiar to the religion within which the ceremony creating it took place. No authority is cited in which a civil court has enforced a concomitant undertaking required by the ecclesiastical authority under which the marriage ceremony was solemnized. That no *121 such civil enforcement of the obligation to appear before the Beth Din was contemplated either by the drafter of the Ketubah or by the parties as its signatories is evident from the inclusion of explicit authorization to the Beth Din “to impose such terms of compensation as it may see fit for failure to respond to its summons or to carry out its decision”. Nothing in the record suggests that it was the intention of the parties when they signed this religious document that the civil courts of the State of New York were to have jurisdiction to determine the substantive rights created thereby or to invoke civil procedures and remedies for the enforcement of such rights. Indeed, any conclusion on the part of our courts that this express provision was not intended by the parties as the exclusive remedy available to them for any breach of their obligations under the Ketubah would itself necessarily entail examination of Jewish law and tradition.
Finally, the evident objective of the present action — as recognized by the majority and irrefutably demonstrated by the complaint — even if procedural jurisdiction were to be assumed, is to obtain a religious divorce, a matter well beyond the authority of any civil court. (Again supplying her own interpretation of the Ketubah, the wife alleges: “That pursuant to the terms of the Ketubah, the plaintiff and defendant agreed that in the event of any civil divorce decree that the husband grant and the wife accept a Jewish divorce decree in accordance with the authority vested in the Beth Din of the Rabbinical Assembly”.) As was noted at the Appellate Division, the interest of the civil authorities of the State of New York in the status of the marriage between these parties was concluded when the final judgment of divorce was entered in 1978.
Chief Judge Cooke and Judges Fuchsberg and Meyer concur with Judge Wachtler; Judge Jones dissents and votes to affirm in a separate opinion in which Judges Jasen and Simons concur.
Order reversed, etc.

 The recital in the testimonium clause itself is indicative — “this Ketubah was executed and witnessed this day in accordance with Jewish law and tradition.”